RENDERED: DECEMBER 13, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky



2017-SC-000531-DG

DATE 3/14/19 Kim Redmon, DC

MEREDITH L. LAWRENCE, AND                                    APPELLANTS
MEREDITH L. LAWRENCE, P.S.C.

ON REVIEW FROM COURT OF APPEALS
V.                    CASE NO. 2016-CA-000510-MR
GALLATIN CIRCUIT COURT NO. 15-CI-00113

BINGHAM, GREENEBAUM, DOLL, L.L.P.;                           APPELLEES
J. RICHARD KIEFER; TALIFERRO CARRAN
AND KEYS, P.L.L.C.; AND ROBERT
CARRAN

## OPINION OF THE COURT BY JUSTICE VENTERS

## AFFIRMING

Appellants Meredith L. Lawrence and Meredith L. Lawrence, P.S.C.,

(Lawrence) appeal from a decision of the Court of Appeals which held that a

criminal defendant who has been convicted at trial and whose conviction has

not been overturned on appeal or through other post-conviction proceedings

may not maintain a legal malpractice action against his criminal defense

attorneys for alleged negligence occurring during the criminal defense

representation. The Appellees, Lawrence's defense attorneys, are Bingham,

Greenebaum, Doll, L.L.P.; J. Richard Kiefer; Robert Carran; and Taliferro, Carran, & Keys, P.L.L.C.[1]

The Court of Appeals' opinion is based upon a doctrine known as the "Exoneration Rule" which has been previously applied by our Court of Appeals but has never been addressed or adopted by this Court. We granted discretionary review to consider the merits of the rule.

The Exoneration Rule provides that a criminal defense attorney may not be sued for legal malpractice in a case resulting in the conviction of his or her client unless the client has been exonerated by direct appeal or upon post-conviction relief. The rationale for the rule is that the sole cause of the conviction is the criminal conduct of the client rather than the poor performance of the defense counsel. Thus, absent subsequent exoneration, the convicted defendant cannot establish that his attorney was the cause of his conviction. The Exoneration Rule, with slight variations discussed below, is the majority rule across the nation.

For the reasons stated below, we follow the lead of the Court of Appeals and most of our sister-state jurisdictions in adopting the Exoneration Rule.

---

[1] This date we have rendered another opinion involving these parties, 2017-SC-000105-DG, reversing and remanding a Kenton Circuit Court decision by which that court set aside a default judgment against Lawrence. The default judgment arose from Bingham Greenbaum's counterclaim to enforce Lawrence's promissory note representing his obligation to pay attorney fees arising out of defense of the federal tax case. Lawrence had initiated the Kenton Circuit action alleging malpractice, which claim was dismissed *without prejudice* since the federal tax case was then still pending. This case is the re-filing of Lawrence's malpractice claim.

Upon application of this rule to Lawrence's legal malpractice claim, we affirm the trial court's dismissal of his claims against Appellees. Upon that conclusion, we recognize Lawrence's remaining claims on appeal as moot or otherwise without merit.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Lawrence was formerly an attorney and a member of the Kentucky Bar Association. In 2012, he was found guilty in federal district court of violating 26 U.S.C. § 7206(1), a felony offense involving false and fraudulent tax returns which Lawrence allegedly filed between 2004 and 2006. He was sentenced to twenty-seven months in prison and ordered to pay $128,253 in restitution to the United States Treasury.[2]

Lawrence's conviction was affirmed on direct appeal. *See U.S. v. Lawrence*, 557 Fed. Appx. 520 (6th Cir. 2014).[3] Lawrence unsuccessfully sought a new trial pursuant to Federal Rule of Criminal Procedure 33.[4] *U.S. v. Lawrence*, 2015 WL 428087 (E.D. Ky. 2015). He later filed a petition for habeas corpus, seeking post-conviction relief in federal district court pursuant to 28 U.S.C. § 2255.[5] His petition was denied, and the district court denied a

---

[2] As a result of his conviction Lawrence was disbarred from the practice of law in Kentucky. *Kentucky Bar Assn. v. Meredith L. Lawrence*, 2012-SC-000406-KB.

[3] Rehearing was denied April 21, 2014. Petition for a writ of certiorari was denied October 6, 2014. *Lawrence v. U.S.*, 135 S. Ct. 223 (2014).

[4] FRCP 33 provides in part: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment."

[5] 28 U.S.C. § 2255 provides in part as follows: "(a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released

certificate of appealability to the United States Sixth Circuit Court of Appeals. *U.S. v. Lawrence*, 2016 WL 3212161 (E.D. Ky. 2016); *U.S. v. Lawrence*, 2016 WL 4803934 (E.D. Ky. 2016). He petitioned the Sixth Circuit for a certificate of appealability, which was denied by Order entered April 4, 2017. *See Lawrence v. U.S.*, Case No. 16-5870 (6th Cir. April 4, 2017). Lawrence has now exhausted all conventional post-conviction direct and collateral attacks against his conviction.

In October 2015, while the federal litigation was still pending, Lawrence filed a civil action in the Gallatin Circuit Court against the attorneys and law firms that defended him in his federal court trial. His sole cause of action was that his attorneys had committed professional negligence in their defense of his criminal charges.[6] The Complaint was entitled, "CAUSE OF ACTION PROFESSIONAL NEGLIGENCE." The complaint alleges that "the representation provided by the defendants jointly and individually were [sic] laced with professional negligence, gross negligence, breach of fiduciary duty, breach of contract both express and implied, breach of professional failure to observe the rules and order of the court and were intentionally reckless and

---

upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

[6] The Complaint also named as a plaintiff Lawrence's professional service corporation, Meredith Lawrence, P.S.C. The Complaint alleges solely the one count of professional negligence that relates to Lawrence's individual alleged damages, thus the analysis is the same for both Lawrence and the P.S.C.

4

wanton with the representation of the defendants, including but not limited to the violating the constitutional rights of the defendants." More specifically, the complaint alleged that Lawrence's attorneys were negligent by failing to comply with a scheduling order relating to the disclosure of expert witness testimony; by failing to object to certain testimony presented at trial; and by failing to move for a bill of particulars. This negligence, according to Lawrence's complaint, caused the "utter failure" of his trial defense and "subjected Mr. Lawrence to ineffective assistance of counsel."

Consistent with the results obtained in his post-conviction litigation, Lawrence's complaint does not allege that he has been exonerated or that his conviction has been otherwise overturned. Instead, his complaint demonstrates that he remains under conviction for the crimes.

Based upon the Exoneration Doctrine, the trial court granted Appellees' motion to dismiss Lawrence's complaint pursuant to CR 12.02(f), for failure to state a claim upon which relief can be granted. The trial court also denied Lawrence's subsequent motions under CR 59 and 60 to alter, amend, or vacate the dismissal. The Court of Appeals affirmed the trial court's dismissal.

Lawrence identifies thirteen arguments for relief in the "Arguments" section of his brief, some of which overlap. They include: (1) that Lawrence is actually and factually innocent of the federal crimes charged; (2) that the Appellees are collaterally estopped from asserting the Exoneration Rule because their conduct was intentional and egregious; (3) that the Exoneration Rule should not be applied where defense counsel willfully/intentionally

5

breaches his fiduciary duties owed to his client; (4) the Appellees should not be able to rely upon the collateral estoppel effect of the federal habeas corpus proceeding finding no ineffective assistance of counsel because the Appellees failed to properly plead it in this case; (5) the Exoneration Doctrine and its reliance on the ineffective assistance of counsel standard is not applicable to his claims concerning fee disputes, intentional post-trial betrayal, violations of Supreme Court Rules, fraud, and concealment; (6) his legal malpractice claims should be allowed to proceed under the language of KRS 411.165, and that KRS 411.165 preempts the Exoneration Rule; and (7) the doctrine is inapplicable in cases of professional negligence where the attorney fee is unreasonable, or when the attorney fails to provide his case file to his former client.

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief may be granted under CR 12.02(f) "admits as true the material facts of the complaint." *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010). Therefore, a motion under the rule should not be granted "unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved . . . ." *Id.* In assessing the motion, "the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true." *Id.*

This standard of review eliminates any need by the trial court to make findings of fact because all the facts asserted in the complaint must be taken as true. The question is purely a matter of law. Stated another way, the court

must ask if the facts alleged in the complaint can be proven, would the plaintiff be entitled to relief? *Id.* Since the matter is purely a question of law, a reviewing court owes no deference to a trial court's determination. Accordingly, we review the issue *de novo.*

## III. ANALYSIS

KRS 411.165, titled "liability of attorney for professional negligence," establishes a statutory basis for malpractice suits against attorneys:

> (1) If any attorney employed to attend to professional business neglects to attend to the business, after being paid anything for his services, or attends to the business negligently, he shall be liable to the client for all damages and costs sustained by reason thereof.
>
> (2) If any attorney employed to attend to any professional business receives his fee and does not attend to the business, he may be sued and made to refund the fee.

In this instance we directly address for the first time the issue of whether a criminal defendant who was convicted of a crime and whose conviction has not been overturned on appeal or otherwise set aside by way of post-conviction proceedings, may maintain a legal malpractice action against his trial attorney for negligence in the presentation of the criminal defense. The Court of Appeals has addressed the issue a number of times applying the Exoneration Rule. *See Ray v. Stone,* 952 S.W.2d 220 (Ky. App. 1997) (the client must establish his innocence before he can demonstrate that his attorney's actions were the proximate cause of his conviction and resulting damages); *Stephens v. Denison,* 150 S.W.3d 80 (Ky. App. 2004) (exoneration is a pre-requisite for maintaining client's legal malpractice action against his defense counsel); and

7

the unpublished cases of *Violett v. Milliken*, 2006-CA-000303-MR, 2006 WL 3372523 (Ky. App. 2006) ("a criminal client suing counsel for legal negligence must first establish his innocence in a criminal proceeding") and *McNeeley v. Spencer*, No. 1999-CA-003017-MR, 2002 WL 31126910 (Ky. App. 2002).

Upon review, we agree with the rationale and public policy considerations underlying the rule. Consequently, we agree with the trial court that the Appellants' complaint was properly dismissed without prejudice.

**The Exoneration Doctrine**

A legal malpractice claim in Kentucky requires a plaintiff to prove: (1) an employment relationship between the plaintiff and the attorney; (2) the attorney neglected his or her duty to exercise the ordinary care that a reasonably competent attorney acting in the same or similar circumstances would exercise and; (3) the attorney's negligence was the proximate cause of the plaintiff's damages. *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003) (citing *Stephens v. Denison*, 64 S.W.3d 297, 298-99 (Ky. App. 2001)). "In this context, proximate cause involves a 'but for' determination, i.e., but for the attorney's malfeasance, the client— read: defendant—would not have been convicted." *U.S., ex rel. U.S. Attorneys ex rel. Eastern, Western Districts of Kentucky v. Kentucky Bar Assn.*, 439 S.W.3d 136, 156 (Ky. 2014).

It is the "but for" causation element of a legal malpractice case that provides the most important justification for the Exoneration Rule. A criminal defendant's own actions constitute the "sole, proximate, and producing cause of the indictment, conviction, and resultant incarceration." *Stone*, 952 S.W.2d

8

at 224. Because the defendant's own actions are deemed to be the exclusive proximate cause of his injury, public policy prohibits him from maintaining a legal malpractice action against his criminal defense attorneys *unless* he has been subsequently exonerated. *Id.*

Although, as noted, we have not heretofore upheld the Exoneration Rule in Kentucky, a favorable mention of the rule can be found in dicta in *U.S. Attorneys*, 439 S.W.3d at 156. There, we addressed the legal implications of allowing a defendant to waive his or her ineffective assistance of counsel claims by post-conviction litigation in exchange for a guilty plea. Our ruling in the case is consistent with the Exoneration Rule; we said in dicta:

> Admittedly, in Kentucky, the viability of a malpractice claim following a guilty plea is in doubt. Saving a lengthy discussion of our malpractice landscape, suffice it to say that without having his conviction overturned, a defendant's attempt at proving proximate cause becomes extraordinarily difficult, virtually impossible.

*U.S. Attorneys*, 439 S.W.3d at 156.

Over twenty years ago, in *Ray v. Stone*, 952 S.W.2d 220 (Ky. App. 1997), the Court of Appeals applied the Exoneration Rule, emphasizing the causation element. In *Ray*, the defendant pled guilty to a drug trafficking charge and was unsuccessful in his subsequent post-conviction appeals. He eventually filed a legal malpractice action against his criminal defense attorney alleging negligent representation. Relying heavily upon the influential Texas case, *Peeler v. Hughes & Luce*, 868 S.W.2d 823, 832 (Tex. App. 1993), the Court of Appeals held that Ray was collaterally estopped from litigating the issue of his innocence because he had pleaded guilty to the crimes, and he had not

9

received any post-conviction relief for ineffective assistance of counsel. 952 S.W.2d at 223-24; *see also Carmel v. Lunney*, 119 A.D.2d 50 (N.Y. App. Div. 3d Dept. 1986); *Hockett v. Breunig*, 526 N.E.2d 995 (Ind. App. 1988).

In applying the Exoneration Rule, the Court in *Ray* referenced the public policy consideration that prohibits a defendant from enjoying financial gains, either directly or indirectly, as a result of his criminal acts. "There being no fact question concerning his innocence, public policy compels us to conclude that any acts or omissions by attorney Stone are not the cause of Ray's alleged damages." 952 S.W.2d at 224. *Ray* holds that the plaintiff's "own unlawful conduct" was "the sole, proximate, and producing cause of the indictment, conviction, and resultant incarceration." *Id.* *Ray* further holds that to prove an attorney's actions were the proximate cause of a criminal defendant's injuries, "the plaintiff must establish his innocence." The Court held that Ray's guilty plea vitiated any claim of innocence, that Ray could not therefore prove proximate causation and that Ray should not be permitted to profit off of his own wrongdoing. *Id.*

*Ray* illustrates the public policy concerns at issue, but *Ray* involved a guilty plea in which the criminal defendant/malpractice case plaintiff admitted his own guilt in open court. Lawrence did not admit his guilt by pleading guilty, so *Ray* is somewhat distinguishable. However, we are persuaded that no sound reason exists to apply one rule for criminal defendants who plead guilty and a different rule for those found guilty beyond a reasonable doubt by a jury. We are persuaded that the rationale and public policy considerations

10

identified in *Ray* are likewise applicable in a jury-verdict case and that the relative positions of the guilty plea defendant and jury-verdict defendant are substantially identical insofar as the Exoneration Rule is concerned.

In *Stephens v. Denison*, 150 S.W.3d 80 (Ky. App. 2004), the Court of Appeals faced a factual scenario similar to the case now before us. The defendant in *Stephens* was convicted after a jury trial and sentenced to imprisonment for twenty years. His conviction was upheld on direct appeal. Stephens then filed a legal malpractice suit against his attorney claiming his attorney failed to notify him about a plea offer "until it was too late to accept it," and that his attorney "was under the influence of cocaine during the trial." *Id.* at 81.

The trial court granted summary judgment to Stephens' former attorney because Stephens had no expert testimony to support his legal malpractice claim. *Id.* at 82. On appeal, the Court of Appeals rejected the trial court's rationale for the dismissal and instead affirmed the judgment based upon application of the Exoneration Rule. Stephens could not demonstrate that he had been exonerated, and so, he could not maintain his malpractice claim.

The *Stephens'* court relied heavily upon *Canaan v. Bartee*, 72 P.3d 911 (Kan. 2003). In *Canaan*, the Kansas Supreme Court surveyed the state court decisions and observed that most state courts require that a criminal defendant asserting a claim of legal malpractice against his or her defense

11

lawyer establish exoneration by post-conviction relief *or* actual innocence. *Id.* at 915-16.

*Canaan* also notes, in addition to the causation issue noted above, other rationales, which have been identified in support of the Exoneration Rule, some of which overlap:

> Various policies or justifications have been stated for the exoneration rule, including: equitable principles against shifting responsibility for the consequences of the criminal's action; the paradoxical difficulties of awarding damages to a guilty person; theoretical and practical difficulties of proving causation; the potential undermining of the postconviction process if a legal malpractice action overrules the judgments entered in the postconviction proceedings; preserving judicial economy by avoiding relitigation of settled matters; creation of a bright line rule determining when the statute of limitations runs on the malpractice action; availability of alternative postconviction remedies; and the chilling effect on thorough defense lawyering.

*Id.* at 123 (citations omitted). *See also, e.g., Coscia v. McKenna & Cuneo,* 25 P.3d 670, 673 (Cal. 2001); *Hicks v. Nunnery,* 643 N.W.2d 809, 824 (Wis. App. 2002); *Humphries v. Detch,* 712 S.E.2d 795 (W. Va. 2011); *Ang v. Martin,* 114 P.3d 637 (Wash. 2005) (en banc); *Steele v. Kehoe,* 747 So. 2d 931, 933 (Fla. 1999) *Shaw v. State, Dept. of Admin., Public Def. Agency,* 816 P.2d 1358, 1361 (Alaska 1991); *Glenn v. Aiken,* 569 N.E.2d 783, 788 (Mass. 1991)}; *Peeler v. Hughes and Luce,* 909 S.W.2d 494 (Tex. 1995).

*Canaan* also notes several jurisdictions have not adopted the Exoneration Rule but have criticized or rejected the rule. 72 P.3d at 918. Among those states are Alabama (*Mylar v. Wilkinson,* 435 So. 2d 1237 (Ala. 1983)); Indiana (*Silvers v. Brodeur,* 682 N.E.2d 811, 818 (Ind. App. 1997));

12

Michigan (*Gebhardt v. O'Rourke*, 510 N.W.2d 900 (Mich.1994)); New Mexico (*Duncan v. Campbell*, 936 P.2d 863 (N.M. App. 1997)); and Ohio (*Krahn v. Kinney*, 538 N.E.2d 1058 (Ohio 1989)).

Upon consideration of the arguments presented herein, the public policy considerations identified above, the rationale for the rule, the acceptance of the rule among the majority of states, and its application in Kentucky by the Court of Appeals for over twenty years, we recognize and adopt the Exoneration Rule as a defense in legal malpractice actions in this jurisdiction. Nevertheless, as alluded to above, there are slight variations of the rule that have developed in terms of defining the threshold level of exoneration which a plaintiff must plead in order to proceed with a legal malpractice claim in the context of a criminal defense.

Among the jurisdictions that have adopted the Exoneration Rule, three different standards are used to define the plaintiff's burden. Some states require the plaintiff to demonstrate exoneration through a successful appeal or by post-conviction relief collaterally attacking the conviction. Some states require the plaintiff demonstrate exoneration by appeal or post-conviction relief, and in addition, establish actual innocence. *See Gibson v. Trant*, 58 S.W.3d 103, 108-09 (Tenn. 2001) (collecting cases). Some states allow the plaintiff's claim to proceed by showing either exoneration through appeal or post-conviction relief, *or in the alternative*, actual innocence. *Id.* Of these variations, we believe the first option best implements the objectives of the rule.

13

We are persuaded that requiring the plaintiff to show exoneration upon direct appeal or a successful collateral attack on the conviction through post-conviction proceedings satisfies the rule. Proof of actual innocence imposes an undue burden as it is ordinarily difficult to prove a negative. Moreover, the criminal defendant in the underlying case, in which the alleged malpractice occurred, is not required to prove actual innocence; a criminal defendant is entitled to an acquittal when there is a reasonable doubt about his guilt.

We further believe that the option allowing a plaintiff who has not been exonerated through direct appeal or collateral attack to maintain an action for malpractice against his defense attorney would lead to a re-litigation of the criminal case before the jury in the civil malpractice case. We are confident that Kentucky's right to appeal and post-conviction proceedings, along with the availability of federal habeas corpus remedies, provide an efficient and complete structure for obtaining exoneration following an unjust criminal conviction in the event of actual innocence. A plaintiff, who was actually innocent of charges for which he was wrongfully convicted because of his attorney's malpractice, has ample means of establishing the elements essential to the filing of a legal malpractice action.

In summary, we adopt the following articulation of the Exoneration Rule: to survive a motion to dismiss for failure to state a claim in a professional malpractice case against a criminal defense attorney, the convicted client must plead in his complaint that he has been exonerated of the underlying criminal conviction. He or she need not prove actual innocence, but they also may not

14

rely solely upon a claim of actual innocence in the absence of an exonerating court decision through appeal or post-conviction order. Further, the statute of limitations on the legal malpractice claim does not begin to run until the post-conviction exoneration occurs.

Because Lawrence failed to allege that he had been exonerated of his convictions through post-conviction proceedings, the trial court correctly dismissed his legal malpractice claim without prejudice.

## IV. OTHER ISSUES

As noted above, Lawrence also raises other issues. We have examined his remaining arguments. We are satisfied that those arguments are totally without merit or rendered moot upon our adoption of the Exoneration Rule. The Exoneration Rule applies only to professional malpractice claims. Appellants concern relating to fee disputes is unfounded because that issue relates to contractual matters and thus is not affected by the Exoneration Rule.

Lawrence also claims that the trial court should not have dismissed his intentional infliction of emotional distress and other claims against the Appellees. Our examination of Lawrence's complaint demonstrates that he alleged only a single cause of action: professional negligence. It follows that his ancillary claims all stem from the same professional negligence claim, a claim that, as explained above, fails due to the lack of exoneration. *See Abel v. Austin*, 411 S.W.3d 728, 737-38 (Ky. 2013).

Finally, Lawrence claims the judge erred by converting a motion to dismiss into a motion for summary judgment and not permitting a reasonable

opportunity for discovery. This claim likewise fails, as it is apparent from the face of his complaint that the case was properly dismissed without prejudice and no resort to extrinsic evidence was required.

## V. CONCLUSION

For the reasons stated above, the decision of the Court of Appeals is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANTS MEREDITH L. LAWRENCE, P.S.C. AND MEREDITH L. LAWRENCE:

Brandy Lawrence
Meredith L. Lawrence

COUNSEL FOR APPELLEES BINGHAM, GREENEBAUM, DOLL, L.L.P., AND J. RICHARD KIEFER:

Beverly Ruth Storm
Arnzen, Storm & Turner, P.S.C.

COUNSEL FOR APPELLEES TALIFERRO CARRAN AND KEYS, PLLC, AND ROBERT CARRAN:

Jeffrey C. Mando
Adams, Stepner, Woltermann & Dusing, PLLC

16