# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 14, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0044-DG

MARK HANDY                                                                                          APPELLANT

V.
ON REVIEW FROM COURT OF APPEALS
NO. 2021-CA-0664
JEFFERSON CIRCUIT COURT NO. 20-CI-004304

LOUISVILLE/JEFFERSON                                                                            APPELLEE
COUNTY METRO GOVERNMENT

**MEMORANDUM OPINION OF THE COURT**

**REVERSING AND REINSTATING**

Subject to certain exceptions, the Claims Against Local Governments Act[1] (CALGA) mandates that a local government provide for the defense of its employees in any tort action arising out of an act or omission that occurs within the scope of that employee's employment, and further mandates that the local government must pay any judgment or settlement arising therefrom. KRS 65.2005(1). However, a local government may seek indemnification from an employee for those expenses under CALGA if "[t]he employee acted or failed to act because of fraud, malice, or corruption[.]" KRS 65.2005(3)(a). In Kentucky, those indemnity claims are subject to a five-year statute of limitations

---

[1] Kentucky Revised Statutes (KRS) 65.200 to KRS 65.2006.

pursuant to KRS 413.120. *Norohna v. Zolkiewicz*, 583 S.W.3d 42, 46 (Ky. App. 2018) (citing *Affholder, Inc. v. Preston Carroll Co., Inc.*, 27 F.3d 232, 234 (6th Cir. 1994)).

In this case, Louisville/Jefferson County Metro Government (Metro) filed a CALGA indemnity claim against Mark Handy (Handy), a former Louisville Metro Police Department (LMPD) detective. Handy's numerous acts of misconduct during the course of his employment led to Edwin Chandler (Chandler) being convicted and sentenced to thirty years' imprisonment for crimes he did not commit. After Chandler was exonerated, he filed a 42 U.S.C.A. § 1983 claim against Metro, Handy, and others alleging numerous violations of his civil rights. Metro paid Handy's legal fees, and it reached an 8.5-million-dollar settlement with Chandler on Handy's behalf which it paid.

Six years after the Chandler settlement agreement was reached, Handy was indicted for perjury in relation to Chandler's case. Two years after that, Handy pled guilty to the charge. One month later, Metro filed a CALGA indemnity claim against Handy on the basis that he acted or failed to act because of fraud, malice, or corruption during the Chandler investigation and trial. Handy filed a motion to dismiss the claim and asserted that the statute of limitations on Metro's indemnity claim began running when Chandler filed his § 1983 claim or, at the latest, it began when Metro agreed to pay Chandler an 8.5-million-dollar settlement. Metro argued in response that it had absolutely no knowledge of Handy's "malice, fraud, or corruption" until he pled

2

guilty or, at the earliest, until he was indicted, and its claim was therefore timely.

The Jefferson Circuit Court found that the statute of limitations began to run on Metro's indemnity claim, at the latest, when it reached its settlement agreement with Chandler, and it dismissed the claim as untimely. The Court of Appeals reversed the circuit court because it did not make a finding as to when Metro knew or reasonably should have known of Handy's malice, fraud, or corruption. *Louisville/Jefferson Cnty. Metro Gov't v. Handy*, 2021-CA-0664-MR, 2022 WL 12138037, at *3 (Ky. App. Oct. 21, 2022). It remanded to the circuit court for it to make that finding and proceed accordingly. *Id.* After review, we reverse the Court of Appeals and reinstate the circuit court's order dismissing Metro's indemnity claim against Handy as untimely.

## I.   FACTS AND PROCEDURAL BACKGROUND

Chandler filed his § 1983 complaint in July 2010. The complaint listed several LMPD police officers as defendants, but in February 2012 Chandler voluntarily dismissed his claims against all individually named officers save for Handy and Sargent Jay Pierce (Pierce).

Chandler's complaint alleged the following facts. On September 28, 1993, Percy Phillips (Phillips) murdered Brenda Whitfield (Whitfield) while she was working as a clerk at a Chevron gas station in Louisville. Phillips entered the gas station at approximately 10:15 pm and waited for the only other individual in the store to leave. Phillips then went to the cooler, grabbed a bottle of malt liquor, and placed it on the checkout counter. When Whitfield

3

opened the cash register to give Phillips change, he shot her in the face and stole the paltry amount of money in the register. When Phillips fled the scene, he left the malt liquor bottle, which had his fingerprint on it, and his hat containing a least one hair in it. In addition, the station's video surveillance captured the entire incident, and two eyewitnesses saw Phillips at the scene: the individual who left the store just before the shooting and an individual who saw Phillips flee the scene while pumping gas.

Handy was assigned as the lead detective in Whitfield's murder case and was responsible for the investigation. Handy committed unconscionable and egregious misconduct during the investigation which ultimately led to Chandler's wrongful conviction. That misconduct included: recording over the surveillance footage depicting the robbery and murder; mischaracterizing and/or omitting information provided by witnesses; disregarding the fact that a fingerprint analyst determined that none of the latent fingerprints found on the bottle of malt liquor matched Chandler's fingerprints; disregarding the fact that a forensic examiner determined Chandler's hair did not match the hair found in the cap left by the shooter at the scene; coercing Chandler's alibi witnesses into changing their statements; and using improper photographic lineups.

Handy also improperly coerced Chandler into providing a false confession. Chandler discovered he was wanted by police after seeing his photograph on the news several days after the shooting and voluntarily went to the police station without counsel to clear his name. Chandler was subjected to an improper polygraph examination after his initial interrogation and was

4

falsely told he had failed it. He was then subjected to an "aggressive" two-hour interrogation by Handy and Pierce during which they confronted him with several pieces of "evidence" they had proving his guilt, each of which were lies. This false evidence included: that he failed his polygraph; that a customer of the Chevron station had identified him as the shooter; that his neighbors had identified the hat left at the scene as belonging to him; and that his fingerprints were found on the bottle of malt liquor left by the shooter. They also threatened to prosecute the family members Chandler had been living with for harboring a fugitive if he did not confess. Additionally, Handy provided Chandler with several details about the crime that had been withheld from the public so that Chandler could regurgitate them in his "confession." In particular, that the last customer to leave the Chevron station before the shooting had been wearing a Chicago White Sox cap.

During Chandler's trial in February 1995, the Commonwealth's case relied almost solely on Chandler's "confession." Significantly, Handy falsely testified that he learned one fact about the case for the first time from Chandler: that the last customer to leave the Chevron station before the shooting was wearing a Chicago White Sox cap. This was represented to the jury as a fact that only the perpetrator could have known. Chandler was ultimately convicted of first-degree robbery and second-degree manslaughter and was sentenced to thirty years' imprisonment. Chandler was paroled in 2002 after serving seven years of his sentence. He then began a tireless campaign to exonerate himself and successfully lobbied LMPD's cold case unit

5

to have the fingerprints found on the malt liquor bottle entered into AFIS.[2]  In October 2009, one of the prints on the bottle was matched to Phillips and he was shortly thereafter indicted for Whitfield's murder.  In the same month, the Jefferson County Commonwealth's Attorney filed a joint motion with Chandler to vacate and set aside his conviction and sentence.

As previously mentioned, Metro appointed and paid for Handy's legal representation in defending Chandler's § 1983 suit in accordance with CALGA. KRS 65.2005(1).  On October 9, 2012, two years after the claim was filed, Metro entered into a settlement agreement with Chandler for 8.5 million dollars.  Metro paid the entire settlement sum pursuant to CALGA.  *Id.*  Metro asserts to this Court that the settlement agreement did not involve any admissions of liability or wrongdoing, but the agreement itself is not in the record now before us.

On September 26, 2018, six years after Metro entered into the settlement agreement with Chandler, Handy was indicted by a Jefferson County grand jury for one count of perjury in relation to Chandler's case and one count of tampering with physical evidence concerning a different case.  Nearly two years later in June 2020, Handy pled guilty to one count of perjury pursuant to a plea deal.  Under the terms of that deal, the Commonwealth dismissed the tampering charge, and Handy acknowledged the following facts:

> On or about February 7, 1995, in Jefferson County, Kentucky, the defendant was the lead officer in the matter of Commonwealth v. Edwin Chandler, 93CR3293.  The defendant testified in trial that

---

[2] Automated Fingerprint Identification System.

> Mr. Chandler told him in an interview that an individual was in the store prior to the homicide and was wearing a Chicago White Sox hat. This fact was material to the proceedings against Mr. Chandler as the individual who committed the murder would have been the only person aware of this fact which had not been released to the public. This testimony given by the defendant was untruthful and led to the wrongful conviction of Edwin Chandler.

Handy subsequently withdrew his guilty plea in August 2020.

On July 23, 2020, roughly two years after Handy's indictment and one month after he pled guilty, Metro filed its CALGA indemnity claim against Handy seeking reimbursement for legal fees and the settlement amount. Metro's claim alleged that Handy gave Chandler non-public information about the crime and subsequently perjured himself. But, notably, the claim also alleged that Handy erased the Chevron station video surveillance footage and that he mischaracterized and/or omitted information provided by witnesses during the Chandler investigation. In other words, Handy's conduct as alleged by Metro went beyond the perjury which Metro now claims formed the basis for its belief that Handy acted with fraud, malice, or corruption.

Three months after Metro filed its claim, Handy filed a motion to dismiss pursuant to CR[3] 12.02(f) for failure to state a claim upon which relief could be granted. Handy primarily argued, citing *Affholder, Inc. v. Preston Carroll Co., Inc.*, 27 F.3d 232 (6th Cir. 1994), and *Norohna v. Zolkiewicz*, 583 S.W.3d 42 (Ky. App. 2018), that the statute of limitations began running on Metro's indemnity claim in 2010 when Chandler filed his § 1983 claim. *Affholder* and

---

[3] Kentucky Rule of Civil Procedure.

*Norohna* each involved a common law indemnity claim and held that a claim accrues, and therefore the statute of limitations is triggered, when the party seeking indemnity is provided with "sufficient notice of [its] potential liability." *Affholder*, 27 F.3d at *6-7; *Norohna*, 583 S.W.3d at 47-48. In the alternative, Handy asserted that Metro was certainly on notice that it had an indemnity claim against Handy when it settled the Chandler suit in 2012. Citing *Queensway Financial Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 151 (Ky. 2007), Handy argued that Metro had an affirmative duty to exercise reasonable diligence and investigate him for potential malice, fraud, or corruption and it did not do so. Accordingly, the discovery rule could not save its claim.

Metro countered that *Affholder* and *Norohna* do not apply because its claim was a statutory indemnity claim under CALGA, not a common law indemnity claim. Accordingly, the issue was not when Metro knew of its "potential liability," but rather when it knew that Handy had acted with malice, fraud, or corruption. Metro argued that it had no knowledge of Handy's misconduct until he was indicted and pled guilty to perjury, and that it could not have reasonably known of said misconduct because Handy actively concealed it. Metro claimed that Handy denied any wrongdoing in relation to Chandler's case and had lied under oath regarding said wrongdoing during the § 1983 litigation. Therefore, it asserted, its claim was still viable under the discovery rule, or in the alternative, the statute of limitations had been tolled by Handy's active concealment.

8

The circuit court initially denied Handy's motion to dismiss with a barebones ruling that simply found that "the Plaintiff's complaint is sufficient to state a cause of action against the Defendant." Later, upon Handy's motion for reconsideration and clarification, the circuit court dismissed Metro's claim. Its order read:

> Louisville/Jefferson County Metro Government ("Louisville Metro") brings this indemnification action against Handy in connection with amounts it paid Edwin Chandler ("Chandler") to resolve a 2010 lawsuit. Handy contends the indemnification action is untimely as it was filed outside of the applicable five-year statute of limitations. Citing *Affholder, Inc. v. Preston Carroll Co., Inc.*, 27 F.3d 232 (6th Cir. 1994), and *Norohna v. Zolkiewicz*, 583 S.W.3d 42 (Ky. App. 2018), Handy emphasizes that knowledge of potential liability triggers the start of the applicable five-year statute of limitations in this matter and Louisville Metro had knowledge of any potential indemnification claim when Chandler filed suit against him in 2010 or at the time Louisville Metro settled Chandler's claims in 2012.

> Louisville Metro contends it did not have knowledge of its indemnification claim until Handy was indicted for perjury in 2018. Louisville Metro alternatively contends it did not have knowledge of its indemnification claim until Handy entered a subsequently withdrawn guilty plea to perjury in 2020. Under the latter rationale, the five-year statute of limitations has not begun to run. The court finds Louisville Metro's positions to be without merit. At the latest, the applicable five-year statute of limitations began to run in 2012 when Louisville Metro settled Mr. Chandler's claims. That is when Louisville Metro had knowledge of Handy's potential liability. The indemnification claim is untimely. The motion to reconsider will be granted. Louisville Metro's complaint against Handy will be dismissed.

The circuit court did not address Metro's argument that the statute of limitations had been tolled by Handy's alleged concealment. Metro appealed the circuit court's ruling to the Court of Appeals.

9

The Court of Appeals reversed and held that the circuit court erred by dismissing Metro's claim based on "knowledge of Handy's potential liability." *Handy*, 2022 WL 12138037, at *3. The court noted that the "discovery rule operates to save claims for injuries that were not immediately discoverable when those injuries occurred," and that to trigger the statute of limitations under the discovery rule one must know: (1) that he has been wronged, and (2) by whom the wrong was committed. *Id.* at *2. It held that

> Metro only has an indemnification claim against Handy for his known acts of fraud, malice, or corruption. In the circuit court's written order, there is no finding when Metro had knowledge of Handy's fraud, malice, or corruption – there is only a finding of when Metro knew of Handy's potential liability, which took the form of the mere claim of liability Chandler brought suit to prove but never did, and which Metro denied and defended against. Handy's liability was merely alleged at that point and KRS 65.2005 did not authorize Metro to initiate a claim for Handy's potential liability.

*Id.* The court remanded to the circuit court for further proceedings "beginning with a finding of when Metro knew or reasonably should have known of Handy's fraud, malice, or corruption[.]" *Id.* In doing so, the Court of Appeals acknowledged that if "Metro knew or reasonably should have known of Handy's wrongdoing in 2012, then Metro's claim would be time barred under the applicable statute of limitations." *Id.* Handy now appeals the Court of Appeals' ruling to this Court.

10

## II.  ANALYSIS

When reviewing a circuit court's ruling dismissing a case for failure to state a claim, we assume that all the facts asserted in the plaintiff's complaint are true.  *See, e.g., Lawrence v. Bingham, Greenebaum, Doll, L.L.P.*, 567 S.W.3d 133, 137 (Ky. 2018).  We then ask whether the plaintiff is entitled to relief based on those facts.  *Id.*  As this is purely a question of law, our review of a circuit court's order dismissing for failure to state a claim is reviewed *de novo*. *Id.*

Before this Court, the parties' arguments remain largely the same. Handy asserts that *Affholder* and *Norohna* apply, and that the statute of limitations on Metro's claim therefore began running in 2010 when Chandler filed his § 1983 claim.  In the alternative, he asserts that the statute of limitations began running when Metro settled the Chandler claim.  Handy contends that the allegations contained in the Chandler complaint were more than sufficient to put Metro on notice that it had a potential indemnity claim against him.  Accordingly, he argues, the Court of Appeals' application of the discovery rule directly conflicts with *Queensway*, as that precedent is clear that a claimant has a duty to promptly investigate further when a claimant has reasonable notice that it may have a claim.

In response, Metro asserts that *Affholder* and *Norohna* are inapplicable, and it continues to claim that it had "zero knowledge" of Handy's fraud, malice, or corruption until Handy pled guilty to perjury.  It therefore asserts that the Court of Appeals was correct in applying the discovery rule to its claim against

11

Handy. It argues in the alternative that the statute of limitations should have been tolled because Handy actively attempted to conceal his wrongdoing by lying under oath during the § 1983 litigation.

We agree with Metro that *Affholder* and *Norohna* are inapplicable, and therefore the statute of limitations did not begin running when Chandler filed his § 1983 claim. Nevertheless, we disagree with the Court of Appeals' application of the discovery rule in this case. "[T]he discovery rule is available only in cases where the fact of injury or offending instrumentality is not immediately evident *or discoverable with the exercise of reasonable diligence*[.]" *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 61 (Ky. 2010) (emphasis added). The circumstances leading up to the § 1983 litigation, the facts alleged by Chandler during that litigation, and the settlement that resulted were more than sufficient to put Metro on notice that it should have investigated Handy for fraud, malice, or corruption. *See Queensway*, 237 S.W.3d at 151. By its own admission, Metro allowed Handy to continue his employment as an LMPD detective after the Chandler settlement. Metro now tries to benefit from its own claimed inaction, asserting that it did not know of Handy's misconduct until he pled guilty to perjury.

Metro's cause of action for indemnity against Handy accrued in 2012 when it entered into and paid the Chandler settlement agreement. The discovery rule does not save its claim, and the statute of limitations was not tolled.

12

We begin with an explanation of why *Affholder* and *Noronha* are inapplicable in this case. Nearly three decades ago in *Affholder*, this Court was asked by the Sixth Circuit to certify the law of Kentucky regarding when the statute of limitations began to run on a common law indemnity claim. 27 F.3d at 233. The case concerned a wastewater treatment project for the Metropolitan Sewer District of Louisville (MSD). *Id.* A subcontractor on the project sued its general contractors for additional costs incurred due to alleged defects in the project's design and soil conditions. *Id.* at 234. The general contractors in turn filed a third-party indemnity claim in the case against MSD and the engineering companies that worked on the project. *Id.* The third-party defendants filed a motion for summary judgment based on their argument that the indemnity claim was untimely, and the Sixth Circuit sought certification of Kentucky law regarding, *inter alia*, when the statute of limitations began to run on the claim. *Id.* at 233.

The certification of law issued by this Court in response held that the statute of limitations began running on the general contractors' indemnity claim against the third-party defendants when the subcontractor filed its claim against the general contractors. *Id.* at 235. The Court noted that "[a] party is responsible to know the date on which a cause of action is or reasonably should have been discovered. It is that knowledge, whether actual or imputed, that triggers the start of any applicable statute of limitations." *Id.* It went on to reason that "the damage or wrong" that occurred in the case was "the potential liability claimed by [the subcontractor] against the [general

13

contractors,]" and that "[t]he date of the filing of the claim was the first moment in time that the [general contractors] could have possibly known that they were facing potential liability." *Id.*

In *Norohna*, Nirmala Norohna (Norohna) the co-owner of a company sought indemnity against, *inter alia*, her investors. 583 S.W.3d at 43. Norohna alleged that her investors fraudulently diverted the company's accounts receivable to themselves, leaving the company unable to pay its federal withholding taxes in the second and third quarters of 2000. *Id.* at 43-44. This led to the IRS assessing Norohna for the company's unpaid taxes with interest and penalties in 2001. *Id.* at 44. After unsuccessfully fighting the IRS's assessment for several years, Norohna began paying the assessment in 2011 and paid it off in 2015. *Id.* In 2016, Norohna filed an indemnity claim against the investors and others for repayment of the tax assessment. *Id.* The circuit court granted the defendants' motion to dismiss the claim as untimely. *Id.* at 45.

The Court of Appeals affirmed. *Id.* The court rejected Norohna's argument that the statute of limitations was not triggered until 2011 when she began to pay the assessment, and instead held that it began running in 2001 when the IRS initially assessed the company's unpaid taxes against her. *Id.* at 47. Applying *Affholder*, the court reasoned that was the point in time at which she "had actual knowledge of possible liability." *Id.*

Although we are somewhat wary of the holding in *Affholder* and the reinforcement of that holding in *Norohna*—how can a cause of action for

14

indemnity accrue before the party seeking indemnity has paid anything for which he or she could be indemnified? —we have not been asked to revisit or overturn those opinions and, at any rate, they have no application here. Unlike those cases, which concerned common law indemnity claims, the cause of action for indemnity in this case is derived from statute. Specifically, CALGA directs that

> (3) A local government may refuse to pay a judgment or settlement in any action against an employee, or **if a local government pays any claim or judgment against any employee** pursuant to subsection (1) of this section, **it may recover from such employee the amount of such payment and the costs to defend if**:
>
>> (a) The employee acted or failed to act because of fraud, malice, or corruption[.]

KRS 65.2005(3)(a) (emphasis added). Consequently, a cause of action for an indemnity claim under this provision of CALGA requires: (1) that a local government has paid a claim or judgment on behalf of an employee; and (2) that the employee acted or failed to act due to fraud, malice, or corruption. If we were to apply the holdings in *Affholder* and *Norohna* in this case, we would be bound to hold that the statute of limitations on Metro's indemnity claim began running in 2010 when Chandler filed his § 1983 claim, as that was the date Metro had knowledge of its "potential liability." But, at that point, Metro had not paid "any claim or judgment" assessed against Handy. Its cause of action under CALGA for indemnity had therefore not accrued, and the statute of limitations could not have yet been triggered.

15

As the statute of limitations did not begin running upon the filing of Chandler's § 1983 suit, the question becomes: when did it begin to run? A basic tenet of the law concerning statutes of limitations is that, generally, a statute of limitations begins to run when the underlying cause of action accrues, i.e., a harmful act and a resulting injury have occurred. The discovery rule, on the other hand, "presumes that a cause of action has accrued . . . but that it has accrued in circumstances **where the cause of action is not reasonably discoverable**, and it tolls the running of the statute of limitations until the claimant knows, or reasonably should know, that injury has occurred." *Michels v. Sklavos*, 869 S.W.2d 728, 732 (Ky. 1994) (emphasis added). In other words, the discovery rule has no application in cases where the cause of action is reasonably discoverable by the plaintiff.[4] *Queensway* is demonstrative.

In *Queensway*, Queensway Financial Holdings, Ltd. (Queensway) agreed to buy Paradigm Insurance Company (Paradigm). 237 S.W.3d at 143. Under the purchase agreement, Paradigm was to produce an audited financial statement as of September 30, 1997, to set the purchase price. The audit was performed by Cotton & Allen, P.S.C. (Cotton & Allen), which had been performing Paradigm's audits for several years. *Id.* Cotton & Allen delivered the audit on December 16, 1997, and Queensway purchased and took over

---

[4] Indeed, the discovery rule is most often applied in cases where a cause of action is not reasonably discoverable through due diligence such as medical malpractice where the rule finds its origin. *See Tomlinson v. Siehl*, 459 S.W.2d 166 (Ky. 1970).

16

Paradigm's operations on December 31. *Id.* at 144. On the day of the purchase, sometime after it was completed, Greg Bubalo (Bubalo), Paradigm's general counsel and head of claims, informed Queensway that its reserves were being increased by $ 3.3 million. *Id.* Prior to the purchase, on December 5, Bubalo had informed Queensway's actuary that he was changing the way the reserves were to be calculated, and that Paradigm's method for setting reserves "was in need of systematic revision." *Id.* at 143. In October 1998, the Indiana Department of Insurance reviewed Paradigm's books and questioned the adequacy of its reserves. *Id.* at 145. And, on February 15, 1999, the Department of Insurance ordered that Paradigm's reserves be adjusted upward by approximately 6 million dollars. *Id.*

In February 2000, Queensway filed suit against Cotton & Allen for breach of contract and professional malpractice in auditing Paradigm's financial statements. *Id.* at 147. Cotton & Allen filed a motion to dismiss, claiming the suit was filed outside the one-year statute of limitations for professional malpractice. *Id.* The circuit court granted the motion, and the Court of Appeals affirmed. *Id.*

Before this Court, Queensway argued that the statute of limitations should have been tolled until at least February 1999 when the Department of Insurance ordered Paradigm's reserves be adjusted. *Id.* Queensway argued this was the point at which its cause of action accrued because its damages had become fixed and non-speculative. *Id.* at 148. The *Queensway* Court rejected this argument, as it did not focus on the "correct injury and damages."

17

*Id.* at 149.  The Court explained that any damages Queensway suffered stemmed from its overpayment for Paradigm, and therefore its damages became fixed and non-speculative at the time of the purchase in December 1997.  *Id.*  In other words, "[i]f the reserves were set too low, then the price paid for the company was too high[,]" and "the reserve adjustment did not require Queensway or Paradigm to pay out any money; rather, it required only that cash from surplus be shifted to reserves[.]"  *Id.*  The Court accordingly concluded that "Queensway's cause of action accrued well more than a year prior to its filing suit[,]" and the survival of its claim depended on "whether it enjoy[ed] the benefit of the discovery rule."  *Id.* at 150.

With regard to the discovery rule, Queensway argued—as Metro does here—that there was "a material issue of fact as to when it knew or reasonably should have known of its cause of action[.]"  *Id.*  This Court rejected this argument outright and held that "Queensway should have known of its cause of action beginning in December 1997 when it completed its purchase."  *Id.*  It held that the "controlling factor" was that Queensway was informed by Bubalo that the reserves were being increased by $3.3 million on the day it purchased Paradigm.  *Id.* at 151.  The Court explained:

> At that time, Queensway had knowledge of a reduction in the value of Paradigm and should have known that something was amiss with the way reserves were being calculated.  When combined with the fact that the reserves had previously been adjusted upward as part of a plan to "attain adequacy" of reserves, the significant, postpurchase adjustment should have been especially troubling.
>
> The response to this is that the obvious problems with Paradigm's reserve setting system did not by themselves mean Queensway

18

should have known of Cotton & Allen's alleged negligence. **However, that Queensway had to make a significant adjustment, and in essence suffered losses after having had the benefit of Cotton & Allen's audit report, should have put them on notice that something was wrong with the report. Cotton & Allen's report showed no problem with the reserves, yet within weeks of its delivery, Paradigm had to make significant adjustments to those reserves. The disconnect between these two facts is striking and would lead a reasonable owner to investigate why the report had failed to show the inadequacy of reserves that had to be adjusted upward only a short time later**. Assuming Cotton & Allen was responsible for assessing the reserves (rather than relying on actuarial certifications), such an investigation would have revealed one of two things as of December 31, 1997: either Paradigm's claims had taken significant unpredictable turns in the fourth quarter, or Cotton & Allen had been negligent in auditing the reserves.

Regardless of which option (or combination of the two) was true, **it was clear that Queensway knew it had suffered damages at that time by the amount of the decrease in Paradigm's true value as a result of the reserves adjustment. The fact that the cause of the injury may not have been obvious does not mean Queensway could avoid the effects of the discovery rule statute of limitations at that point**. "[T]he discovery rule does not operate to toll the statute of limitations to allow an injured plaintiff to discover the identity of the wrongdoer unless there is fraudulent concealment or a misrepresentation by the defendant of his role in causing the plaintiff's injuries." *McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. App. 1999). "A person who knows he has been injured has a duty to investigate and discover the identity of the tortfeasor within the statutory time constraints." *Combs v. Albert Kahn Associates*, Inc., 183 S.W.3d 190, 199 (Ky. App. 2006). **Had Queensway exercised reasonable diligence, it would have taken some steps, upon notice of the $3.3 million reserves adjustment, to discover the source of the injury.**

*Id*. (emphasis added). This Court accordingly upheld the circuit court's dismissal of Queensway's claim, as it "'had numerous opportunities to discover any issues regarding the mishandling of the insurance reserves' and should

19

have known of its injury as early as December 1997 and no later than October 1998." *Id.* at 152.

Applying *Queensway* to the facts of this case, it is clear that Metro's cause of action against Handy accrued in 2012. Metro paid an 8.5 million dollar settlement to Chandler and was therefore clearly injured as of that year. And the cause of Metro's injury was Handy's fraud, malice, or corruption: At the time Chandler filed his suit, it was an undeniable, objective fact that Chandler had been convicted and sentenced because of an investigation for which Handy was responsible, and that he had later been exonerated based on evidence that Handy had in his possession from the outset of the investigation. This should have put Metro on notice that something was very badly amiss with Handy and his conduct. Had Metro exercised due diligence or, indeed, performed any follow up investigation of Handy at all, it could have easily discovered that his investigation was absolutely wrought with malice, fraud, and corruption. After all, Metro was a party to the § 1983 suit. As a practical matter, that litigation consisted of a plaintiff-led investigation into Handy's fraud. Consequently, in accordance with *Queensway*, Metro does not now get to avail itself of the discovery rule.

For similar reasons, we are likewise unpersuaded by Metro's argument that the statute of limitations should be tolled. There are two necessary prerequisites for the application of equitable tolling: "a litigant must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing," with those

20

circumstances being beyond the litigant's control.'" *See, e.g., MGG Inv. Group LP v. Bemak N.V., Ltd.*, 671 S.W.3d 76, 88 (Ky. 2023) (quoting *Williams v. Hawkins,* 594 S.W.3d 189 (Ky. 2020)). Even if this Court were to conclude that Handy's efforts to conceal his misconduct by lying under oath constituted an "extraordinary circumstance," Metro has not proven that it has been diligently pursuing its rights, as it sat on this indemnity claim for eight years and did nothing to further investigate Handy's misconduct.

### III. CONCLUSION

Based on the foregoing, we conclude that Metro's cause of action for indemnity under CALGA accrued in 2012. Accordingly, the statute of limitations on that claim began running in 2012, rendering Metro's 2020 complaint well-outside the five-year statute of limitations. Metro does not receive the benefit of the discovery rule because it was placed on notice in 2012 that it should have further investigated Handy's conduct surrounding the Chandler investigation, and now asserts it did not. The statute of limitations is not tolled for the same reason. The Court of Appeals is hereby reversed and the circuit court order dismissing its claim is hereby reinstated, based on different reasoning.

All sitting. VanMeter, C.J.; Conley, Keller, Lambert, and Nickell, JJ., concur. Thompson, J., dissents by separate opinion, in which Bisig, J., joins.

THOMPSON, J., DISSENTING. Respectfully, I dissent and would affirm the well-reasoned Court of Appeals opinion. The majority allows an admittedly dishonest police officer, Mark Handy, to escape all financial responsibility for

21

the actions he took that led to the wrongful imprisonment of an innocent man, Edwin Chandler. The majority does so on the basis that the Louisville/ Jefferson County Metro Government (Metro), should have been able to determine sooner that Handy "acted or failed to act because of fraud, malice, or corruption[.]" Kentucky Revised Statutes (KRS) 65.2005(3)(a). This decision leaves Metro and taxpayers responsible for shouldering the cost of Handy's defense and the subsequent substantial settlement provided to Chandler, even though the first conclusive evidence of Handy's fraud was not produced until 2020, when Handy admitted to the perjury in conjunction with a criminal case brought against him relating to his actions vis-a-vis Chandler's criminal prosecution. Metro acted properly in then immediately seeking indemnification.

The Claims Against Local Governments Act (CALGA) requires local governments to defend their employees and pay judgments arising from acts or omissions that occur within the scope of their employees' employment. KRS 65.2005(3). This obligation "is absolute in the absence of a statutory exception." *Louisville/Jefferson Cnty. Metro Gov't v. Braden*, 519 S.W.3d 386, 395 (Ky. App. 2017). However, CALGA contains only very narrow grounds for either refusing to defend and pay any judgment or settlement, or for seeking recovery of the cost to defend and the repayment of any judgment or settlement. KRS 65.2005(3). Due to such restrictions, Metro was obligated to provide Handy with a defense and be financially responsible for the ultimate resolution of Chandler's claim, until and unless it had conclusive proof that one of the five exemptions in KRS 65.2005(3)(a)-(e) was present. Additionally,

22

there can be no proper action for indemnification until after a local government has actual knowledge that an exemption applies. In this sense, CALGA recovery claims are distinguishable from ordinary cases, because local governments' statutory duty puts them in a different position relative to their employees than ordinarily occurs in civil complaints.

The circuit court in granting a dismissal of Metro's indemnification in Handy's favor ruled: "At the latest, the applicable five-year statute of limitations began to run in 2012 when Louisville Metro settled Mr. Chandler's claims. That is when Louisville Metro had knowledge of Handy's *potential* liability." (Emphasis added).

The majority agrees, explaining that at that time Metro knew that Chandler had been convicted and sentenced because of a botched investigation for which Handy was responsible and had later been exonerated based on evidence Handy had in his possession, which should have put Metro on notice that something was badly amiss. The majority opines: "Had Metro exercised due diligence or, indeed, performed any follow up investigation of Handy at all, it could have easily discovered that his investigation was absolutely wrought with malice, fraud, and corruption." For this reason, the majority believes that the five-year statute of limitations for indemnification had lapsed and had not been tolled. I disagree.

I instead agree with the Court of Appeals that the circuit court's finding that Metro had knowledge in 2012 of "Handy's *potential* liability, which took the form of a mere *claim* of liability Chandler brought suit to prove but never did[,]"

23

could not authorize Metro to initiate a claim pursuant to KRS 65.2005(3)(a). *Louisville/Jefferson Cnty. Metro Gov't v. Handy*, 2021-CA-0664-MR, 2022 WL 12138037, at *3 (Ky. App. Oct. 21, 2022). While Metro knew at the time it entered into the settlement agreement that Handy was negligent in his handling of the murder investigation (and thus civil liability was established), nothing in the record below suggests to me that Metro knew or reasonably should have known at that time, that Handy had acted fraudulently.

The facts as I am aware of them, militate against Metro having such awareness in 2012. Chandler's allegations were just allegations and while it was evident that Handy had badly erred in conducting the murder investigation, Metro could not easily resolve whether Handy's missteps were the result of carelessness, ignorance, a faulty memory, or incompetence or were the result of deliberate and fraudulent actions on his part.

In conjunction with the civil trial, Handy admitted at his March 7, 2012, deposition that the videotape of the murder did get erased, but denied that he deliberately allowed for its erasure, explaining that he should have removed a tab from the video to prevent it from being taped over and the failure to do so was a violation of procedure. However, besides that error, Handy denied doing anything inappropriate or improper which led to Chandler's conviction, denied any dishonesty in his handling of the murder investigation, denied attempting to mislead the prosecutor, denied providing any details to Chandler about the crime, and repeatedly stated that Chandler lied that Handy had provided him with details about the crime.

24

The settlement was entered prior to there being any resolution of where the truth lay as the basis for Handy's errors was as yet unclear. Based on Handy's sworn deposition testimony and Chandler's allegations, Metro could have reasonably believed: (1) Handy's account that his missteps in connection with preserving the videotape were accidental, and Chandler was lying about his other allegations relating to Handy perjuring himself; (2) Handy may have accidentally given Chandler information about the crime but did not realize he had done so and testified honestly, but erroneously, that such information originated with Chandler; (3) it was impossible to resolve Handy's motivations; or (4) Handy possibly may have acted deceptively or dishonestly in part, but Metro could not conclude that this rose to the level of fraud, malice or corruption with the information reasonably available to it. Simply put, only Handy knew why he took the actions that he took. Metro could have prudently decided to settle the lawsuit based on its calculation of the risks of proceeding to trial on the negligence of Handy, rather than based on a belief that any wrongdoing which occurred on Handy's part was fraudulent.

It is not appropriate to use Metro's good-faith effort to comply with CALGA, in providing for Handy's defense, against Metro. *See generally Braden,* 519 S.W.3d at 395 (discussing that a local government providing an employee a defense does not function as an acknowledgment that such employee was acting within the scope of employment and decrying the chilling effect such a holding would have which "would place municipal employees in greater individual and financial peril . . . in direct conflict with the spirit and intent of

25

CALGA"). Yet, that is just what the majority does in requiring Metro to promptly act against its employee in the absence of proof or lose such opportunity.

It does not further the purposes of CALGA if every time a local government suspects that an employee is being less than honest and forthcoming but could also possibly simply be in error, that it is obligated to treat its employee in an adversarial manner. I do not believe that as a matter of policy we want to encourage a local government to have to essentially work to aid a civil plaintiff's case, so that the local government could be positioned to immediately seek recovery from such employee. Instead, it is far more reasonable to allow local governments to wait for outside information to emerge which will resolve the matter. The majority opinion incentivizes local governments to act improvidently in suing their employees to preserve claims which may not be valid or lose the privilege of seeking reimbursement later. This imperils employees from realizing the benefits of CALGA.

In 2018, Handy was indicted for perjury and tampering with physical evidence in conjunction with Chandler's conviction. *Commonwealth v. Handy*, No. 18-CR-002871 (Jefferson Cir. Ct. filed Sept. 26, 2018).[5] At that junction, Metro could perhaps resolve that if there was evidence sufficient for an

---

[5] A review of CourtNet has confirmed Metro's account of what took place regarding the Commonwealth's criminal case against Handy and provided clarification of what occurred in it since Metro's indemnification case has been on appeal.

26

indictment, it could properly pursue its claim for indemnification, which would be timely for five years.

However, a more definitive event took place in 2020, when Handy pled guilty to perjury in the first degree in conjunction with a plea agreement, in exchange for dismissal of the tampering charge with five years probated. The trial court rejected the recommended sentence of five years probated as being too lenient and Handy withdrew his plea. However, this event certainly provided Metro with definitive evidence that Handy acted in a fraudulent manner. Indeed, Metro recognized that by filing its complaint for indemnification promptly after this occurred.

Ultimately, in 2021, Handy pled guilty to perjury in the first degree and tampering with physical evidence in exchange for concurrent one-year sentences with the agreement that he would not seek probation and he was sentenced in accordance with this agreement. This provided further evidence that Handy acted in a fraudulent manner.

I agree with the Court of Appeals that it is up to the circuit court to determine when Metro knew or reasonably should have known of Handy's wrongdoing, such that its claim accrued. Unfortunately, the record below was simply insufficiently developed to resolve this issue. Therefore, it would be appropriate to reverse and remand for the further development of the record so that the circuit court could resolve when Metro first knew or reasonably should have known of Handy's fraud: whether this was in 2012 (when Metro entered into a settlement agreement with Chandler), in 2018 (when Handy was indicted

27

for perjury and tampering with evidence), or in 2020 (when Handy entered a plea to perjury).

I note that Metro may have had additional obligations to defend Handy. In addition to KRS 65.2005, there is a policy and procedures manual outlining Metro's responsibilities to its employees, and the Fraternal Order of Police contract likely had additional provisions that are pertinent.

These matters would best be addressed by remanding for an extensive evidentiary hearing to be followed by appropriate factual findings. Among the issues to consider would be whether, based on Handy's own actions of false representation and concealment, equitable estoppel would preclude him from using the statute of limitations as a defense. *See Williams v. Hawkins*, 594 S.W.3d 189, 193-94 (Ky. 2020) (discussing and comparing equitable estoppel and equitable tolling).

Accordingly, because I conclude that the majority errs in determining that Metro's cause of action of indemnity under CALGA accrued in 2012, I dissent.

Bisig, J., joins.

COUNSEL FOR APPELLANT:

Michael M. Denbow
Michael D. Risley
Jennifer Henry Jackson
Stites & Harbison, PLLC


COUNSEL FOR APPELLEE:

Jan Michele West
Jonathan David Goldberg
Goldberg Simpson, LLC