James D. RAY, Appellant,

v.

Alec G. STONE, Appellee.

No. 95–CA–00008–MR.

Court of Appeals of Kentucky.

Aug. 22, 1997.

James D. Ray, LaGrange, pro se.

Roy Kimberly Snell, LaGrange, for appellee.

Before WILHOIT, C.J., and ABRAMSON and EMBERTON, JJ.

*OPINION*

EMBERTON, Judge.

James D. Ray brings this *pro se* appeal from summary judgment entered November 14, 1994, dismissing Ray's legal malpractice action against Alec G. Stone. Ray sought compensatory and punitive damages in the amount of two million dollars from Stone for his alleged negligent representation of Ray in a criminal matter. For the reasons that follow, we agree with the trial court's conclusion that Stone was entitled to judgment as a matter of law. The indictment handed down against Ray and the resultant conviction were caused by Ray's own actions, for which he admitted guilt, and not by acts or omissions on the part of Stone. Consequently, we affirm the judgment.

On January 7, 1993, an indictment was returned by the Meade County Grand Jury charging Ray with DUI (third offense); trafficking in a controlled substance (second offense); and with being a persistent felony offender in the first degree.

On April 8, 1993, Ray pleaded guilty to the charge of trafficking in a controlled substance (cocaine) second degree. The Commonwealth recommended a nine-year sentence for this offense and moved to dismiss the DUI and PFO I charges. The court accepted Ray's plea, and he was sentenced to serve nine years in the penitentiary. The complete record of this underlying criminal case has not been certified for our review. Apparently, Ray has made several unsuccessful post-conviction motions seeking to have the judgment vacated or set aside. However, the rulings on these motions were subsequent to the entry of summary judgment in the present case.

In this civil suit, filed May 23, 1993, Ray makes no averment that he has obtained or sought post-conviction relief, nor does he in any way assert his innocence of the underlying criminal offense. He simply alleges that as counsel representing him in Meade Circuit Court, action number 93–CR–005, Stone failed to perform his duties and responsibilities, thereby denying Ray his constitutional right to due process, equal protection, and a fair trial. Specifically, Ray charges that Stone: (1) failed to present exculpatory evidence in Ray's behalf; (2) failed to adequately and effectively prepare a defense; (3) failed to call witnesses on Ray's behalf; and (4) failed to represent Ray to the best of his ability.

In support of his motion for summary judgment, Stone contended he provided effective assistance of counsel commensurate with an objective standard of reasonableness under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Stone asserts that the evidence against his client was substantial. The charges followed the investigation of an automobile collision in which Ray was involved. He was found to have been operating a vehicle that crossed the center line of the roadway and struck an oncoming automobile. Fifty-eight grams of cocaine were contained in Ray's vehicle at the time of the collision. Later through conferences with his client, through discovery and various

other means of preparation, Stone was able to secure for Ray an agreement whereby, if Ray pleaded guilty to the trafficking charge, all other charges would be dismissed. As Stone pointed out, had the case proceeded to trial and Ray found guilty of both trafficking and PFO I, a penalty of not less than 10 years without parole would have been imposed as required by Ky.Rev.Stat. (KRS) 532.080. Ultimately, Ray plead guilty. He has not asserted that his decision to plead guilty was based on advice from Stone. This notwithstanding, it is well-established that advice by a lawyer for a client to plead guilty is not an indication of any degree of ineffective assistance. *Beecham v. Commonwealth,* Ky., 657 S.W.2d 234 (1983); *Glass v. Commonwealth,* Ky., 474 S.W.2d 400 (1971).

The record includes a transcript of the colloquy among Stone, Ray, and the court at the April 8, 1993, hearing on Ray's Motion to Enter Guilty Plea (AOC Form 491). The motion contains these assertions:

> I have reviewed a copy of the indictment and told my attorney all the facts known to me concerning my charge. I believe he/she is fully informed about my case. We have discussed and I understand my charge and any possible defense to them. Because I am guilty and make no claim of innocence, I wish to plead guilty in reliance on the attached Commonwealth's Offer on a plea of guilty.
>
> I declare my plea of guilty is freely, knowingly, intelligently and voluntarily made, that I have been represented by competent counsel, and that I understand the nature of this proceeding and all matters contained in the document.

The record reveals Ray reviewed, acknowledged and signed this document in open court. The transcript demonstrates that in accordance with the procedural requirements set forth in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the circuit court thoroughly questioned Ray to determine that his plea was knowingly, voluntarily and intelligently entered. The court further inquired as to whether he was satisfied with the services his counsel provided and whether there was a factual basis for his admission of guilt.

The court enumerated Ray's constitutionally guaranteed rights to a trial by jury, to confront and cross-examine witnesses and to protection from self-incrimination. Ray affirmed that he understood these rights and desired that each be waived and that his plea be accepted. The colloquy includes the following exchange:

> The Court: Mr. Ray, are you satisfied with the services and legal advice rendered on your behalf by your attorney, Mr. Alec Stone?
>
> Defendant: Yes sir.
>
> . . . .
>
> The Court: Have you been threatened, forced or in any way coerced into entering this plea of guilt?
>
> Defendant: No sir.
>
> . . . .
>
> The Court: Okay, Mr. Ray, we've just recessed for a couple of minutes, the court watched you read the document or go over the document. I ask you now, are you satisfied that you now understand each and every provision set forth in this document?
>
> Defendant: Yes sir.
>
> The Court: And that document is the motion to enter a guilty plea?
>
> Defendant: Yes sir.
>
> The Court: And your signature on the back of the document, is that your voluntary act and deed?
>
> Defendant: Yes sir.
>
> The Court: Nobody made you sign it?
>
> Defendant: No sir.
>
> . . . .
>
> The Court: Mr. Ray, when I placed—started this procedure, I placed you under oath. I now ask you under oath, how do you plead to count II of the indictment which charges you with the offense of trafficking in a controlled substance in the second degree, for the second or subsequent offense, specifically, you had in your possession with the intent to sell, a quantity of cocaine?
>
> Defendant: Yes sir. Guilty.

The Court: Are you telling me under oath that you're guilty because you in fact, are guilty and for no other reason?

Defendant: Yes sir.

Based on the pleadings and the transcript of Ray's guilty plea, Stone maintained summary judgment was appropriate. The trial court agreed and concluded, as a matter of law, that a defendant who has knowingly, intelligently and voluntarily entered a plea of guilt may not maintain a malpractice action against his defense attorney.

 Considering the record, we reject Ray's first argument on appeal; namely, that the trial court abused its discretion when it held in abeyance the answers to interrogatories and requests for admissions he propounded to Stone. The civil rules afford a trial court broad power to control discovery and prevent its abuse. *Sedley v. City of West Buechel*, Ky., 461 S.W.2d 556 (1970). Contrary to his assertions, Ray cannot demonstrate that he was deprived of any meaningful "right to discovery." None of the factual information sought would affect the disposition of the case.

Ray's second argument challenges the propriety of summary judgment. The parties have not cited, nor have we found, any law in Kentucky on the precise issue as it is presented in this case. Thus, like the trial court, we have reviewed case law from other jurisdictions for guidance.

 Decisions addressing whether and under what circumstances a convict may sue his defense attorney for legal malpractice illustrate the difficulty the courts have encountered in resolving the issue in light of competing policy considerations. Numerous jurisdictions have held that a defendant who pleads guilty may not thereafter maintain such an action. In so holding, these decisions have generally applied collateral estoppel to preclude the action.[1] For the most part, the doctrine has been applied in one or both of the following approaches toward barring the claim: (1) the plaintiff, who stands convicted, is precluded from relitigating the issue of his admitted guilt in a collateral civil case and is thereby unable to establish his innocence—a prerequisite to proving causation or one of the elements of the alleged negligence; (2) postconviction denial of relief based on ineffective assistance of counsel precludes a civil action for legal malpractice.

In *Carmel v. Lunney*, 119 A.D.2d 50, 505 N.Y.S.2d 735 (1986), *aff'd* 70 N.Y.2d 169, 518 N.Y.S.2d 605, 511 N.E.2d 1126 (1987), a case cited and relied upon by the trial court, the court reasoned:

> To state a cause of action for legal malpractice arising from negligent representation in a criminal proceeding, plaintiff must allege his innocence or a colorable claim of innocence of the underlying offense (citation omitted), for so long as the determination of his guilt of that offense remains undisturbed, no cause of action will lie. Here, because plaintiff's conviction by plea ... has not been successfully challenged, he can neither assert, nor establish, his innocence. He has thus failed to state a cause of action, and his claim was properly dismissed by the Appellate Division, 119 A.D.2d 50, 505 N.Y.S.2d 735.

*Id.* 518 N.Y.S.2d at 607, 511 N.E.2d at 1128.

The trial court also relied on *Hockett v. Breunig*, 526 N.E.2d 995 (Ind.App.1988). In *Hockett* the plaintiff, who had pleaded guilty to a criminal offense, sued his defense attorney for malpractice alleging the attorney misrepresented the results of blood tests which purportedly connected him (Hockett) to the crime. Affirming summary judgment for the attorney, the *Hockett* court stated:

> Hockett admitted at the guilty plea hearing that all facts contained in the information were true. Hockett acknowledged on the record that his plea was knowingly, intelligently, and voluntarily entered. (citations omitted). He is therefore precluded from asserting a contrary position in this malpractice case.

*Id.* at 999. Hockett could not demonstrate that negligence on the part of his attorney was the proximate cause of his incarceration

---

1. *See generally* Gregory G. Sarno, Annotation, *Legal Malpractice in Defense of Criminal Prosecution,* 4 A.L.R. 5th 273 (1992) for a comprehensive compilation and analysis of decisions on this subject.

and alleged damages. In so holding the Indiana court cited *Hughes v. Malone,* 146 Ga.App. 341, 247 S.E.2d 107 at 112 (1978): "[w]hen a defendant states on the record that his plea was not induced, he will not later be heard to claim the contrary."

We support the public policy that prohibits financial gain resulting, directly or indirectly, from criminal acts. In this case Ray unequivocally admitted in open court that he was pleading guilty because he had, in fact, committed the offense. The plea colloquy affirmatively demonstrates Ray's plea was intelligently, voluntarily, and knowingly entered. He has not alleged any act or omission on the part of counsel that is not specifically refuted by the record or waived by virtue of his plea. Thus, he is collaterally estopped from litigating the issue of his innocence. There being no fact question concerning his innocence, public policy compels us to conclude that any acts or omissions by attorney Stone are not the cause of Ray's alleged damages. Instead, Ray must accept as the sole, proximate, and producing cause of the indictment, conviction, and resultant incarceration, his own unlawful conduct. Allowing him to maintain a malpractice action against his attorney would enable him "to profit ... or take advantage of his own wrong, or to found a claim upon his iniquity or to acquire property by his own crime." *In re Estate of Laspy,* 409 S.W.2d 725 at 728 (Mo.App.1966).

■ Before it can be demonstrated that the attorney's actions were the proximate cause of his damages, the plaintiff must establish his innocence. "If a criminal defendant obtains post-conviction relief and proves by a preponderance of the evidence that he is innocent of the underlying offense, he has then satisfied this prerequisite and may be able to prove his attorney's malpractice was the proximate cause of his injuries." *Peeler v. Hughes & Luce,* 868 S.W.2d 823, 832, *aff'd,* 909 S.W.2d 494 (Tex.1995).

■ In *Gossage v. Roberts,* Ky.App., 904 S.W.2d 246, 248 (1995), this court related that "under proper circumstances, a criminal conviction may be used for purposes of collateral estoppel in later civil proceedings."

The *Gossage* court held that because the plaintiff stood convicted of a crime involving intentional conduct, the doctrine of collateral estoppel precluded relitigation of the issue of causation for damages he alleged were occasioned by his incarceration. Analyzing the propriety of the doctrine's application this court stated:

> Plaintiff voluntarily, intelligently, and knowingly waived the issue and entered his plea of guilty. On the incentive to litigate question, a person faced with the potential of being sentenced to a substantial term in prison has every incentive to interpose a defense that would constitute a complete defense to the crimes he is charged with committing. It would be an anomaly to suggest that, when plaintiff abandoned his defense, he did so out of a lack of incentive as opposed to a desire to substantially reduce his potential prison term.

*Id.* at 249.

Mindful that *Gossage* involved a medical malpractice claim as opposed to a legal malpractice claim we, nevertheless, find the following quotation from Professor Geoffrey C. Hazard to be equally pertinent to the present case:

> The clearest case for such an estoppel is where a defendant pleads guilty to a substantial criminal charge and then seeks in civil litigation concerning the same transaction to assert that he did not commit the criminal act. Particularly galling is the situation where a criminal convicted on his own guilty plea seeks as plaintiff in a subsequent civil action to claim redress based on a repudiation of the confession. The effrontery or, as some might say it, *chutzpah,* is too much to take. There certainly should be an estoppel in such a case. (Hazard, *Revisiting the Second Restatement of Judgments; Issue Preclusion and Related Problems,* 66 Cornell L.Rev. 564, 578 (1981)).

*Id.* at 249.

We conclude Ray is collaterally estopped from litigating the issue of his innocence in

this forum. His guilty plea precludes him from now denying his guilt.

We do not go so far as to hold that a criminal defense attorney may never be liable civilly for his negligence in the defense of a criminal case. We simply hold that based on the undisputed facts of this case, Ray's innocence is a prerequisite to proving an element of his negligence claim, and Stone therefore is entitled to judgment as a matter of law.

The judgment is affirmed.

All concur.